UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Martha H,[1] Plaintiff, v. Frank Bisignano,[2] Commissioner of Social Security, Defendant. | C/A No. 8:25-cv-03483-JD-WSB **ORDER** |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2) (D.S.C.) and 28 U.S.C. § 636(c). Plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)) ("the Act"), to obtain judicial review of the Commissioner of Social Security's ("the Commissioner") final decision denying his claims for disability insurance benefits ("DIB") under Title II of the Act.

## PROCEDURAL HISTORY

Plaintiff filed an application under Title II for DIB on March 31, 2020, alleging a disability onset date of May 1, 2016. R. 76-77. Plaintiff's application was denied initially and on reconsideration, and thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 120-130. An administrative hearing was held on November 29, 2021. R. 37. Mark Dunning, an attorney, represented Plaintiff at the hearing. R. 37. Plaintiff appeared and testified

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants only by their first names and last initials due to significant privacy concerns in social security cases.

[2] On May 7, 2025, Frank Bisignano became Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as the Defendant in this matter.

at the hearing. R. 38, 44-68. Additionally, Jacquelyn Schabacker, a vocational expert ("VE"), appeared and testified at the hearing. R. 38, 69-75. The ALJ issued an unfavorable decision on March 16, 2022, finding that Plaintiff was not disabled under the Social Security Act from the alleged onset date, May 1, 2016, through the last date insured, December 31, 2021. R. 12-31. On November 18, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision for the purposes of judicial review. R. 1-6. Plaintiff filed an action in the United States District Court for the District of South Carolina. On motion by the Commissioner, the court remanded that first action back to the Commissioner by Order dated June 7, 2023. R. 3302-3307.

A second administrative hearing was held on January 8, 2024. R. 3214. Plaintiff, represented by the same counsel, appeared and testified at the second hearing. R. 3214-3230. Additionally, the same VE appeared and testified at the hearing. R. 3214-3215, 3230-3233.

The ALJ issued an unfavorable decision on April 17, 2024. R. 3182-3213. In making the determination that Plaintiff is not entitled to benefits, the ALJ found as follows:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2021. R. 3188.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2016, through her date last insured of December 31, 2021 (20 CFR 404.1571 *et seq.*). R. 3188.

3. Through the date last insured, the claimant had the following severe impairments: type I diabetes, carpal tunnel syndrome, neuropathy, asthma and dysfunction of major joints (20 CFR 404.1520(c)). R. 3188.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526.). R. 3189.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can frequently use bilateral upper and lower extremities for pushing and pulling. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently perform handling and fingering. The claimant should avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases and poor ventilation and hazards, such as dangerous machinery and unprotected heights. R. 3191.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). R. 3204.

7. The claimant was born on October 24, 1982 and was 39 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563). R. 3204.

8. The claimant has at least a high school education (20 CFR 404.1564). R. 3204.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). R. 3204.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual function capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). R. 3204.

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from May 1, 2016, the alleged onset date, through December 31, 2021, the date last insured (20 CFR 404.1520(g)). R. 3205.

On February 25, 2025 the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 3170-3176. Plaintiff filed this action for judicial review on April 25, 2025. ECF No. 1.

## APPLICABLE LAW

The Commissioner's findings of fact are conclusive if they are supported by substantial evidence and were reached through application of the correct legal standard. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation and internal quotation marks omitted). Moreover, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Id.* (citation and internal quotation marks omitted); *see Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Slaughter v. Barnhart*, 124 F. App'x 156, 157 (4th Cir. 2005) (citation omitted).

However, the reviewing court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Rhonda J.H. v. Comm'r of Soc. Sec. Admin.,* C/A No. 8:22-cv-02899-JDA, 2024 WL 243471, at *1 (D.S.C. Jan. 23, 2024) (citations omitted). When "the ALJ's decision is not supported by substantial evidence, [the reviewing court] may affirm, modify, or reverse the ALJ's ruling 'with or without remanding the cause for a

rehearing.'" *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974) (citations omitted).

In cases where remand is deemed necessary, the court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *See Shalala v. Schafer*, 509 U.S. 292, 296 (1993). "[T]o remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim." *O'Quinn v. Saul*, C/A No. 2:19-cv-00067-DCN-MBG, 2019 WL 5387910, at *2 (D.S.C. Oct. 22, 2019) (citation and internal quotation marks omitted). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford*, 734 F.3d at 295 ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling."). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith v. Heckler*, 782 F.2d 1176, 1182 (4th Cir. 1986); *Nichols v. Comm'r of Soc. Sec. Admin.*, C/A No. 8:20-cv-01660-CMC-JDA, 2021 WL 3621993, at *3 (D.S.C. July 26, 2021). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Rhonda J.H.*, 2024 WL 243471, at *2 (citation omitted).

In contrast, sentence six provides as follows:

> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a

> showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ….

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is "relevant to the determination of disability at the time the application was first filed"; (2) the evidence is "material to the extent that the [Commissioner's] decision might reasonably have been different had the new evidence been before her"; (3) there is "good cause for the claimant's failure to submit the evidence when the claim was before the [Commissioner]"; and (4) the claimant made "at least a general showing of the nature of the new evidence" to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 925 F.2d 769, 774 (4th Cir. 1991) (citations and internal quotation marks omitted).[3] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *O'Quinn*, 2019 WL 5387910, at *2 (citation omitted). The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *Id.*; *see Allen v. Chater*, C/A No. 95-2344, 1995 WL 579275, at *1 (4th Cir. 1995) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

[3] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts within the United States Court of Appeals for the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See*, *e.g.*, *Miller v. Barnhart*, 64 F. App'x 858, 859-60 (4th Cir. 2003); *Rapheal M.S. v. Comm'r of Soc. Sec. Admin.*, C/A No. 8:22-cv-04301-DCN-JDA, 2024 WL 1528507, at *3 (D.S.C. Jan. 25, 2024). Further, the Supreme Court of the United States of America has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the *Borders* inquiry.

**The Five-Step Evaluation**

"Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months[.]

42 U.S.C. § 423(d)(1)(A). To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

**Substantial Gainful Activity**

"Substantial gainful activity" ("SGA") must be both substantial - involves doing significant physical or mental activities - and gainful - done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(a), (b), 416.972(a), (b). If an individual has earnings from employment or

self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574-404.1575, 416.974-416.975.

**Severe Impairment**

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *see Walker v. Bowen*, 889 F.2d 47, 490-50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). "As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50. If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**Meets or Equals an Impairment Listed in the Listings of Impairments**

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509, 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

**Past Relevant Work**

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204

(4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity ("RFC") with the physical and mental demands of his past relevant work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

A claimant's RFC is the most that he can still do despite his limitations, and it is the ALJ's responsibility to make the RFC assessment by considering all relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1545(a), (c), 416.945(a), (c). Social Security Ruling ("SSR") 96-8p provides in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. Only after that may [the] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

1996 WL 374184, at *1. The SSR further provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

**Other Work**

As previously stated, once the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Grant*, 699 F.2d at 191. To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "Grids"). *Meyer v. Berryhill*, C/A No. 8:16-cv-03310-JMC-JDA, 2018 WL 3133422, at *5 (D.S.C. Jan. 4, 2018). The Commissioner *may* exclusively rely on the Grids when a claimant does not have a nonexertional impairment.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that "[w]hen a claimant suffers from both exertional and nonexertional limitations, the [Grids] are not conclusive but may only serve as guidelines."); *Groth v. Comm'r of Soc. Sec. Admin.*, C/A No. 0:16-cv-01581-JMC, 2018 WL 4140666, at *2 (D.S.C. Aug. 30, 2018).

**Developing the Record**

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).

**Medical Opinions**

For claims filed on or after March 27, 2017, such as Plaintiff's herein, a regulatory framework for considering and articulating the value of medical opinions is provided by 20 C.F.R. §§ 404.1520c, 416.920c. The regulations define the term "medical opinion" as "a statement from

---

[4] An exertional limitation is one that affects the claimant's ability to meet the strength demands of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* §§ 404.1569a(a), 416.969a(a). Examples of nonexertional limitations include, but are not limited to, difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; and difficulty seeing or hearing. *Id.* §§ 404.1569a(c)(1), 416.969a(c)(1).

a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." *Id.* §§ 404.1513(a)(2), 416.913(a)(2). The ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. *Id.* §§ 404.1520c(b), (c), 416.920c(b), (c).

Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). An ALJ may, but is not required to, explain how the remaining factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). When a medical source provides multiple medical opinions, the ALJ "will articulate how [he] considered the medical opinions … from that medical source together in a single analysis …." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). ALJs "are not required to articulate how [they] considered each medical opinion … from one medical source individually." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1).

**Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917.

**Pain and Subjective Symptoms**

Congress has determined that a claimant will not be considered disabled unless he or she furnishes medical and other evidence (*e.g.*, medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). SSR 16-3p provides, "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." 2017 WL 5180304, at *4; *see* 20 C.F.R. §§ 404.1529(c)(1)-(c)(2), 416.929(c)(1)-(c)(2) (outlining evaluation of pain).

In evaluating claims of disabling pain or other subjective symptoms, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005); *see* SSR 16-3p, 2017 WL 5180304, at *3-4. First, "the ALJ must determine whether the claimant has produced medical evidence of a medically determinable impairment which could reasonably be expected to produce" the alleged symptoms. *Morgan*, 142 F. App'x at 723 (citation and internal quotation marks omitted); *see* SSR 16-3p, 2017 WL 5180304, at *3. Second, the ALJ must evaluate "the intensity and persistence of an individual's symptoms such as pain and determine the extent to

which an individual's symptoms limit his or her ability to perform work-related activities ... or to function independently." SSR 16-3p, 2017 WL 5180304, at *4.

## THE PARTIES' POSITIONS

Plaintiff contends that the ALJ erred by failing to provide an adequate discussion of Plaintiff's impairments and limitations. ECF No. 12 at 7-12. Plaintiff argues that the ALJ erred in failing to explain why the RFC omits mental limitations that are supported by the record, and that the ALJ erred in making internally inconsistent findings as to Plaintiff's carpal tunnel syndrome and fibromyalgia. *Id.* Plaintiff also contends that the ALJ erred by improperly evaluating the medical opinions issued by Rachel Pruitt, M.D. ("Dr. Pruitt"), and Cody Freeman, M.D. ("Dr. Freeman"). *Id.* at 12-17. In particular, Plaintiff argues that the ALJ made improper considerations, cherrypicked the record, failed to build an accurate and logical bridge, and failed to consider the consistency between such medical opinions. *Id.* The Commissioner contends that the ALJ's decision satisfies the substantial evidence standard. *See generally* ECF No. 13.

## ANALYSIS

### The ALJ's Assessment of Plaintiff's Mental Impairments

#### *Omitting Mental Limitations That Are Supported by the Record*

Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments were non-severe and omitting limitations from such mental impairments in determining Plaintiff's RFC. ECF No. 12 at 7-10. In support, Plaintiff points to records noting Plaintiff's mental impairments, including depression, anxiety, and attention deficit disorder ("ADD"), as well as a medical opinion issued by Bruce Kofoed, Ph.D. ("Dr. Kofoed"), indicating that such mental impairments limited Plaintiff so that she was only "capable of doing simple repetitive task[s]." ECF No. 12 at 8.

At Step Two, as to the functional area of concentrating, persisting, or maintaining pace, the ALJ found as follows:

> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant had mild limitation. The claimant reports difficulty with performing some activities of daily living because of physical limitations. She has also reported that she does not perform some activities when she is taking certain pain medications, and she has alleged her pain, at times interferes with her ability to engage in activities of daily living. She also reported the medication she takes for her ADD is effective and allows her to perform activities of daily living. Her treatment records do not contain descriptions of signs or symptoms supporting allegations of depression, anxiety, an ADD.

R. 3189. The ALJ did not mention Dr. Kofoed's evaluation at Step Two, but did discuss Dr. Kofoed's evaluation in the RFC analysis as follows:

> Bruce Kofoed, Ph.D., saw the claimant for a consultative psychological evaluation on November 17, 2020. During the evaluation the claimant reported being in a Suboxone Drug Treatment Program until May of 2019. She reported she no longer took suboxone. The claimant did not report why she left the programs, but as shown in her records the claimant was taking opioid medication, which would be contraindicated. The claimant reported using cocaine in the past. She alleged not using any drugs for 639 days. She denied currently receiving mental health care. Inconsistent with her allegation in her Function Report about limiting driving, during this evaluation she admitted driving frequently. She admitted watching her children at sport events and helping get her children to various sports activities and practices. The claimant was observed to be fashionable dressed and groomed. While Dr. Kofoed's diagnostic impression was depressive disorder, his report contains few descriptions of symptoms of depression. He also does not provide any opinions with regard to claimant ability to perform the mental requirement of regular and ongoing work activity (Exhibit 11-F).

R. 3197. Further, in the portion of the RFC analysis wherein the ALJ evaluated the record medical opinion evidence, the ALJ found as follows:

> The opinion of Dr. Kofoed (11F) is persuasive because it consistent with, and supported by, the record as a whole, including the claimant's daily activities.

R. 3203. In Dr. Kofoed's consultative examination report, Dr. Kofoed included a clinical functional assessment, wherein Dr. Kofoed opined as to Plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace. As to Plaintiff's activities of daily living, Dr. Kofoed stated that, "it would appear there are moderate impairments in [Plaintiff's] activities of daily living secondary to her physical health records and I would defer to her health records. R. 1328. As to Plaintiff's social functioning, Dr. Kofoed stated that, "it would appear that her social interaction abilities are mildly impaired." R. 1328. Critically, as to Plaintiff's concentration, persistence, and pace, Dr. Kofoed stated as follows:

> She graduated from high school and is close to having an associate's degree, reporting that she is just 1 class away from having an associate's degree. Today, she showed good basic arithmetic skills and fair to good recall skills. She is capable of doing a simple repetitive task from a cognitive perspective.

R. 1328.

The Court agrees with Plaintiff in that: (1) Dr. Kofoed's opinion sets out a mental RFC limitation, apparently limiting Plaintiff to doing a simple, repetitive task; (2) the ALJ found Dr. Kofoed's opinion persuasive; and (3) the ALJ failed to otherwise reconcile the absence of Dr. Kofoed's opined mental RFC limitation in Plaintiff's RFC elsewhere in the opinion. First, to be clear, the ALJ's failure to include a non-exertional limitation in Plaintiff's RFC accounting for the ALJ's finding of mild impairment in concentrating, persisting, or maintaining pace is not independently error mandating remand. *See Clark v. Kijakazi*, C/A No. 5:22-cv-00460-KDW, 2023 WL 3719807, at *10-11 (D.S.C. May 30, 2023) (recognizing that '"[t]here is no Fourth Circuit Court of Appeals case finding that mild limitations in [concentrating, persisting, or

maintaining pace] must be explained in the RFC'" and finding that an ALJ's analysis in finding a plaintiff had mild limitations in concentrating, persisting, and maintaining pace at Step Two and in the RFC discussion was sufficient to avoid remand.) (quoting *Finley v. Kijakazi*, C/A No. 4:22-cv-01098-TER, 2023 WL 3089922, at *7 (D.S.C. Apr. 26, 2023)); *Darrell M. v. O'Malley*, C/A No. 1:23-cv-4699-SVH, 2024 WL 243437, at *16-17 (D.S.C. Jan. 22, 2024) (recognizing that "[t]he Fourth Circuit has not addressed whether ALJs must include restrictions in RFC assessments to account for mild limitations in concentration, persistence, or pace or explain their reasons for declining to do so," and that "[d]istrict courts in the Fourth Circuit have reached different conclusions upon addressing the issue.") (collecting cases). Rather, because the ALJ found Dr. Kofoed's opinion persuasive, which opines as to a mental RFC limitation, *and* failed to explain why such limitation was not included in Plaintiff's RFC, remand is warranted. *See*, *e.g.*, *Rhonda P. v. O'Malley*, C/A No. SAG-24-cv-0178, 2024 WL 4493413, at *4-5 (D. Md. Oct. 15, 2024) ("[T]he ALJ's failure to include an explanation regarding the RFC's conflict with [a doctor's] persuasive opinion frustrates meaningful review of the ALJ's decision….."); *Jackson v. Saul*, C/A No. 1:19-cv-2683-SVH, 2020 WL 4813322, at *28 (D.S.C. Aug. 19, 2020) (finding that an ALJ erred when the ALJ gave "great weight" to a medical opinion, but "failed to reconcile" a finding that the plaintiff could perform a certain function with the medical opinion's "indication that [the p]laintiff could not engage in any job involving" that function.); *Anderson v. Kijakazi*, C/A No. 2:20-cv-3237-MBS, 2022 WL 391549, at *4-5 (D.S.C. Feb. 9, 2022) ("[T]he court finds that the ALJ erred when he omitted from his RFC assessment a limitation that reflects his finding of Plaintiff's mild mental impairments and failed to state why any such limitation is not necessary.") (comparing *Shinaberry v. Saul*, 952 F.3d 113, 121-22 (4th Cir. 2020)).

In finding that the ALJ erred, the Court also considers the ALJ's discussion of Dr. Kofoed's opinion wherein the ALJ found that, Dr. Kofoed did "not provide any opinions with regard to [Plaintiff's] ability to perform the mental requirement of regular and ongoing work activity." R. 3197. This portion of the ALJ's analysis could be construed as finding Dr. Kofoed's opinion regarding Plaintiff's limitation in concentrating, persisting, and maintaining pace unpersuasive. However, given the ALJ's unqualified statement that she found Dr. Kofoed's opinion persuasive, the Court declines construing the ALJ's potentially contradictory statement as a finding that Dr. Kofoed's opined limitation to simple, repetitive tasks was unpersuasive. *See Rhonda P.*, 2024 WL 4493413, at *4-5 ("[T]he ALJ's failure to include an explanation regarding the RFC's conflict with [a doctor's] persuasive opinion frustrates meaningful review of the ALJ's decision….."). In addition, the Commissioner fails to specifically address the discrepancy between the ALJ finding mild limitation in concentrating, persisting, and maintaining pace at Step Two and finding Dr. Kofoed's opinion persuasive without explanation. *See generally* ECF No. 13. Based on the foregoing, remand is warranted.

**The ALJ's Consideration of the Medical Opinion Evidence**

***The ALJ's Consideration of Dr. Freeman's Opinion***

Plaintiff contends that the ALJ erred in finding Dr. Freeman's opinion as to Plaintiff's limitation in handling and fingering unpersuasive. ECF No. 12 at 12, 15-17. Specifically, Plaintiff argues that the ALJ citing findings that supported limitation to occasional handling and fingering and failing to explain how the record disproves Dr. Freeman's opinion constitutes a failure to build an accurate and logical bridge between the record and cherrypicking the record. *Id.* Plaintiff further asserts that because the VE indicated that no work would exist for Plaintiff if she was limited to occasional handling and fingering, the ALJ's failure to adequately evaluate Dr.

Freeman's opinion cannot be considered harmless error. *Id.* The Commissioner contends that the properly ALJ considered the supportability and consistency of Dr. Freeman's opinion, and that substantial evidence supports the ALJ's evaluation of Dr. Freeman's opinion. ECF No. 13 at 15-16.

Dr. Freeman opined as to Plaintiff's RFC as follows:

> [Plaintiff] suffers from Type I diabetes with associated peripheral neuropathy. This affects her hands and feet as well as her left elbow. She also shows symptoms of bilateral carpal tunnel syndrome.
>
> These problems combined markedly restrict [Plaintiff]'s ability to use her hands for both fine and gross manipulation on a sustained basis. Activities such as writing, using a computer keyboard and a mouse, all cause her pain. Gripping and grasping even small objects such as coins is very difficult for her.
>
> I would limit [Plaintiff]'s handling and fingering to occasional, on the understanding that this means up to one-third of an eight-hour workday. I think it is reasonable to allow her additional breaks during the day so that she can rest her hands.

R. 3918 (alterations added). In the RFC analysis, the ALJ evaluated Dr. Freeman's opinion as follows:

> The opinion of Dr. Freeman (32F) is unpersuasive because his records do not support his opinion. Cody S. Freeman, M.D., a neurologist, saw the claimant on June 16, 2021 for follow up of peripheral neuropathy and other neurologic issues. Dr. Freeman noted there was evidence of generalized sensorimotor, polyneuropathy in the upper extremities with superimposed changes of bilateral carpal tunnel syndrome and bilateral, ulnar entrapment across the elbow. The claimant reported having neuropathic pain in both her feet and hands, as well as her right elbow. Her physical examination revealed she was able to move all her extremities and no deformities of any of her extremities were noted. The claimant was able to rise from a seated position without assistance. Het gait was mildly unsteady, but otherwise unremarkable. The records do not describe the claimant as using or needing an assistive device for ambulation (Exhibit 15-F/36-38). The findings by Dr. Freemen support the residual functional capacity determination for hourly

> changes in positions, limitations on climbing ladders, ropes, and scaffolds. It is also consistent with the assessment of occasional climb of ramps and stairs and the postural limitations described in the residual functional capacity determination. The claimant was seen at Bon Secours Neurology by Dr. Freeman from November 2020 through June 2023. Records from June 2023 show neurology was manageable, may be a little worse (24F/2). She complained of numbness and paresthesias in both hands and feet (Id/3). Diagnoses include generalized sensorimotor polyneuropathy in the upper extremities , bilateral carpal tunnel syndrome and entrapment across the elbow (Id). The records are also notable for a breakthrough seizure since her last visit while she was on vacation and had done an extensive amount of hiking and had not eaten. Records note her headaches were manageable, and a recent brain MRI was unremarkable (Id). His opinion is also inconsistent with the records from The Hand Center. Records from The Hand Center report the claimant presented in July 2020 status post left index and long trigger finger release. It is noted she was doing well overall and was doing a good job regaining motion (29F/2). In September 2020, she complained of bilateral hand numbness and tingling (Id/22). She was diagnosed with ulnar neuropathy of both extremities (Id/25). Plan of care was as follows: We will plan for conservative care for all of these including a resistance band home protocol, NSAIDs, ice/heat, activity modification (Id/25).

R. 3203-3204.

In evaluating medical opinions, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. *Id.* §§ 404.1520c(b), (c), 416.920c(b), (c).

Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). An ALJ may, but is not required to, explain how the remaining factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

her medical opinion(s) … the more persuasive the medical opinions … will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). When a medical source provides multiple medical opinions, the ALJ "will articulate how [he] considered the medical opinions … from that medical source together in a single analysis …." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). ALJs "are not required to articulate how [they] considered each medical opinion … from one medical source individually." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1).

The ALJ did not build an accurate and logical bridge in finding that Dr. Freeman's opinion was not supported by his records. The ALJ erred in finding Dr. Freeman's opinion unsupported by failing to explain why Dr. Freeman's opinion regarding the handling and fingering limitation was not supported by his records. Rather the ALJ jumped "straight from" the summary of Dr. Freeman's records to the conclusion that such records supported the limitations set out in the RFC that the ALJ determined, but did not support Dr. Freeman's opined limitation. *See Thomas v. Berryhill*, 916 F.3d 307, 311-312 (4th Cir. 2019) ("[O]ur precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.") (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

To the extent that the ALJ evaluated the consistency of Dr. Freeman's own records and his opinion, the ALJ's finding that Dr. Freeman's records did not support his opinion does not create a logical bridge. Other than the ALJ's citation to the portion of Dr. Freeman's record that states that Plaintiff was able to move all her extremities, and that her extremities were not deformed, Dr. Freeman's records cited by the ALJ appear to support the limitation that Dr. Freeman proffered in

his opinion. For example, in finding that Dr. Freeman's records did not support the opinion, the ALJ cites to Dr. Freeman's records noting that there was evidence of generalized sensorimotor, polyneuropathy in the upper extremities with superimposed changes of bilateral carpal tunnel syndrome and bilateral, ulnar entrapment across Plaintiff's elbow. The ALJ then cites to seemingly contradictory notes in Dr. Freeman's records, namely Plaintiff's physical examination revealing that Plaintiff was able to move all her extremities and that no deformities of any of her extremities were noted. However, the ALJ fails to reconcile the apparent inconsistency between these records, leaving the Court to guess how the ALJ resolved such inconsistency. *Melissa B. v. Bisignano*, C/A No. 25-cv-02355-CDA, 2026 WL 1992642, at *3-4 (D. Md. July 9, 2026) (remanding because "[t]he ALJ highlights Plaintiff's physical limitations and symptoms before citing seemingly contradictory evidence for both of these impairments without resolving the material inconsistencies," and recognizing that "[a] proper RFC analysis requires the evidence and conclusion to be connected by a logical explanation.") (citing *Thomas*, 916 F.3d at 311); *Montgomery v. Kijakazi*, C/A No. 0:21-cv-3074-JD-PJG, 2022 WL 17853557, at *4-5 (D.S.C. Oct. 26, 2022) (remanding when "the ALJ summarize[d] Plaintiff's medical treatment, reports, and findings, [but] some of these could be construed to in fact support Plaintiff's allegations," and the ALJ did not explain how they reconciled conflicting records.), *R&R adopted by* 2022 WL 17852614 (D.S.C. Dec. 22, 2022).

The ALJ also impermissibly cherrypicked Dr. Freeman's records in finding that such records did not support the opinion. The ALJ did not include any express consideration of the portions of Dr. Freeman's cited records noting that an EMG/NCV conducted on August 2020 showed several abnormalities as follows: (1) "bilateral carpal tunnel syndrome, moderate in degree"; (2) "entrapment ulnar neuropathy at the elbow with focal demyelination affecting

fescicles to FDI bilaterally"; and (3) "diabetic sensory polyneuropathy affecting upper limbs." R. 1724, 3516. The records also noted that an EMG/NCV conducted on June 2020[5] showed "neurophysiologic evidence of sensorimotor axonal polyneuropathy, moderate to severe in degree," and "CV slowness across the right fibular head." R. 1783, 3516. However, these objective tests appear to support Dr. Freeman's opined limitation. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *Montgomery*, 2022 WL 17853557, at *5 ("Rendering review of the ALJ's decision problematic is that it is unclear whether the ALJ considered all of the records or all of the applicable factors."); *Marnie W. v. Bisignano*, C/A No. 3:25-cv-00027, 2026 WL 1654844, at *12-13 (W.D. Va. May 21, 2026) ("Supportability, however, requires the ALJ to evaluate 'the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation. The more relevant the objective medical and supporting explanations presented by a medical source are to support his or her medical opinions ... , the more persuasive the medical opinions ... will be.") (quoting *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023); 20 C.F.R. § 404.1520c(c)(1)), *R&R adopted by* 2026 WL 1654298 (W.D. Va. June 8, 2026); *Rediford B. v. Kijakazi*, C/A No. 3:23-cv-75-MHL-SLS, 2023 WL 9550461, at *9 (E.D. Va. Nov. 9, 2023) (recognizing that "[t]he Fourth Circuit has found cherrypicking where it is clear the ALJ chose to ignore certain statements or facts, sometimes contained in the same medical report.") (citing *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 362 (4th Cir. 2023)), *R&R adopted by* 2024 WL 477515 (E.D. Va. Feb. 7,

---

[5] The ALJ failed to expressly consider the June 2020 EMG/NCV results in evaluating Dr. Freeman's opinion, or anywhere else in the second decision.

2024); *Jackson*, 2020 WL 4813322, at *28 (finding that an ALJ erred by failing to consider whether a medical opinion was consistent with objective test results). In sum, to the extent that the ALJ evaluated the consistency of Dr. Freeman's records and his opinion as to Plaintiff's limitation in handling and fingering, the Court finds that the ALJ improperly cherrypicked the record and failed to build an accurate and logical bridge from the evidence to her finding that Dr. Freeman's opinion was unpersuasive.

To the extent that the ALJ evaluated the consistency between Dr. Freeman's opinion and the records from The Hand Center, the ALJ's finding that such records did not support Dr. Freeman's opinion is not supported by substantial evidence. The ALJ found that Dr. Freeman's opinion was inconsistent with records from The Hand Center, including cited records from an encounter with Plaintiff in July 2020, wherein it was noted that Plaintiff was doing well overall and was doing a good job regaining motion post-trigger finger release surgery. R. 3204, R 3204, 3822. The ALJ also cited The Hand Center records noting that in September 2020, Plaintiff complained of bilateral hand numbness and tingling. R. 3204, 3833-3844. The ALJ further cited The Hand Center records showing that Plaintiff was diagnosed with ulnar neuropathy of both extremities, and that it was recommended that Plaintiff undergo conservative treatment, including using a resistance band home protocol, NSAIDs, ice/heat, and activity modification. R. 3204, 3833-3844. Similar to the ALJ's lack of explanation in finding that Dr. Freeman's records did not support his opinion, the ALJ does not explain why Dr. Freeman's opinion was inconsistent with the records from The Hand Center. Rather, the ALJ cites to records from both sources without actually identifying any points of comparison. *See Thomas*, 916 F.3d at 311-312 ("[O]ur precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.") (citing *Woods*, 888 F.3d at 694). Further, some of the cited records from

both sources support Dr. Freeman's opinion and are consistent with each other, such as: (1) Dr. Freeman diagnosing Plaintiff with generalized sensorimotor polyneuropathy in the upper extremities, bilateral carpal tunnel syndrome, and entrapment across the elbow; (2) The Hand Center noting that Plaintiff complained of bilateral hand numbness and tingling; and (3) The Hand Center diagnosing Plaintiff with ulnar neuropathy of both extremities. Given the lack of explanation or reconciliation of the actual inconsistent records, and these consistent records, the ALJ failed to build a logical bridge to her conclusion that Dr. Freeman's opinion is inconsistent with the records from The Hand Center. *See Thomas*, 916 F.3d at 311-312 ("[O]ur precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.") (citing *Woods*, 888 F.3d at 694); *Montgomery*, 2022 WL 17853557, at *4-5 (remanding when "the ALJ summarize[d] Plaintiff's medical treatment, reports, and findings, [but] some of these could be construed to in fact support Plaintiff's allegations," and the ALJ did not explain how they reconciled conflicting records.).

In addition, the Court agrees with Plaintiff's general argument that Plaintiff's post-surgery improvement does not erase the fact that she had multiple surgeries to the extent that characterizing Plaintiff's treatment as conservative based on The Hand Center's recommendation for conservative treatment constitutes cherrypicking the record. *See* ECF No. 12 at 15 ("[Plaintiff]'s improvement following trigger finger surgery does not erase [Plaintiff]'s neuropathy, carpal tunnel syndrome, ulnar nerve entrapment, or neuromas that Dr. Pruitt explained, all would cause [Plaintiff] to be limited to occasional handling and fingering. Here, the ALJ cherry-picked the record evidence to reject the opinion…."). While the ALJ accurately cited The Hand Center's records indicating that Plaintiff was recommended a conservative course of treatment, the ALJ apparently found the recommendation for conservative treatment inconsistent with Dr. Freeman's opinion. R. 3204. In

doing so, the ALJ appears to ignore the record evidence showing that Plaintiff had multiple surgeries on her hands before and during the relevant period. R. 3192 (noting that Plaintiff testified that she had surgery in 2015 and 2016 for carpel tunnel syndrome in her left and right hands respectively), 3194 (noting that Plaintiff had carpel tunnel release surgery on her left hand on February 23, 2017); *see Lewis*, 858 F.3d at 868-69 (finding that an ALJ mischaracterized a plaintiff's treatment record as conservative when the record demonstrated extensive treatment, including "multiple surgeries.").

Based on the foregoing, the ALJ erred in evaluating the opinion of Dr. Freeman and finding that such opinion was not supported by his records and was inconsistent with the records from The Hand Center. Furthermore, because Dr. Freeman's opinion sets out a limitation to occasional handling and fingering and because the VE testified that no jobs would exist in the national economy if such limitation was added to Plaintiff's RFC, the error is not harmless. R. 3232-3233. Therefore, remand is warranted.

**Remaining Allegations of Error**

In light of the Court's recommendation that this matter be remanded for further consideration, the Court need not specifically address Plaintiff's remaining allegations of error as the ALJ will be able to reconsider and re-evaluate the evidence as part of the reconsideration of this claim. *Hancock v. Barnhart*, 206 F.Supp.2d 757, 763–64 n.3 (W.D. Va. 2002) (stating that, on remand, "[t]he ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing [is] conducted *de novo*."); *see Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). As such, should the district court adopt this recommendation, the ALJ should also take into consideration Plaintiff's remaining allegations of error on remand.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned recommends that the district court **REVERSE** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) and **REMAND** this matter to the Commissioner for further consideration.

**IT IS SO RECOMMENDED.**

s/William S. Brown
United States Magistrate Judge

August 13, 2026
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).